IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DEBRA P. HACKETT, CLK
U.S DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| **TROY CARICO,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **United Parcel Service, Inc.** | ) |
| | ) |
| **Defendant** | ) |

**CASE ACTION NO.:** 2:19-cv-756
**JURY DEMAND REQUESTED**

## COMPLAINT FOR EQUAL EMPLOYMENT OPPORTUNITY

### Parties

1. Plaintiff, Troy Carico, is a resident of Montgomery County, Alabama, and is a qualified individual with a disability as that term is defined under 42 U.S.C. §12111, who had previously engaged in protected EEO activity, Caucasian, and has previously served in the Uniform Services as that term is defined under 38 U.S.C. §4303(13).  Plaintiff was a full-time employee of the Defendant during the relevant time period and was Inbound Operations Supervisor and Lead Operations Supervisor at Defendant's facility, located inn Hope Hull, Montgomery County, Alabama until January 2019.

2. At all times pertinent, the Defendant, United Parcel Service, Inc., (UPS) was Plaintiff's employer, pursuant to Title VII of the Civil Rights Act of 1964 (as

1

amended), 42 U.S.C. sec 2000 (et. seq), 38 U.S.C. §4303(4), and 42 U.S.C. §12111. The Plaintiff's place of employment was at the Defendant's facility located in Hope Hull, Montgomery County, Alabama.

## Jurisdiction and Venue

1. This is a suit to obtain relief for discrimination on the basis of race (Caucasian), under Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act, 42 U.S.C. §12101, et seq., the Uniformed Services Employment And Reemployment Rights Act of 1994 as Amended, 38 U.S.C. §4301 et seq., and various pendant state law claims.

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 38 U.S.C. §4323, 42 U.S.C. §12117, and 42 U.S.C. §2000e-5. Venue is proper under 28 U.S.C. §1391, as the events in question occurred in Northern Division of the Middle District of Alabama.

3. Plaintiff filed his initial Charge of employment discrimination with the United States Equal Employment Opportunity Commission on March 21, 2019, less than 180 days of the last act of discrimination, and received his notice of Right to Sue on July 30, 2019.

4. Plaintiff files this Complaint within 90 days of receipt of the Right to Sue letter from the EEOC.

## Statement of Plaintiffs' Claims

## <u>CASE OVERVIEW</u>

1. Plaintiff, Troy Carico, was employed by the Defendant, United Parcel Service, Inc. (UPS), from August 2015 until January 2019 as Full Time Inbound Operations Supervisor, and Lead Operations Supervisor (terminal manager).

2. Plaintiff is a service-connected disabled veteran due to various issues, including combat wounds sustained while in the service of the nation as a United States Army Officer.

3. Plaintiff was a Veteran's Re-employment and Education Participant and was recruited specifically by UPS due to his status as a disabled veteran.

4. He is also disabled as that term is defined under the Americans with Disabilities Act, 42 U.S.C. §12102(1) in that he suffers from a physical or mental impairment that substantially limits one or more major life activities.

5. Plaintiff is Caucasian.

6. Plaintiff's first immediate supervisor was Mr. Don Culmer, Caucasian, not disabled, not a veteran.

7. Throughout his employment, Mr. Carico received annual appraisals rated as "Excellent" or "Promote Ahead of His Peers."

8. In October 2016, Mr. Culmer was replaced as Plaintiff's immediate supervisor by Mr. Danny Campbell, African-American, not disabled, not a veteran.

9.  Mr. Campbell immediately started to question Plaintiff's need to have appointments with the local VA Hospital.

10. Mr. Campbell excessively scrutinized Plaintiff's scheduled medical appointments even though all remained on Plaintiff's electronic calendar for Mr. Campbell to review.

11. Throughout the remainder of Plaintiff's employment, Mr. Campbell would question Plaintiff numerous times over what he termed to be Plaintiff's "issues."

12. Mr. Campbell also questioned others about Plaintiff's "issues" behind his back, going to several other terminal managers and asking about him.

13. In front of one terminal manager, he called Mr. Carico "psycho," and "what in the hell is wrong with him?"

14. During Plaintiff's employment, Mr. Campbell aggressively questioned employees and drivers working under Plaintiff about his Post Traumatic Stress Disorder and other medical issues.

15. During one telephone call, Mr. Campbell stated directly to Plaintiff: "What exactly in the hell is wrong with you . . . what is your major problem?"

16. In April 2018, Mr. Campbell sent Mr. Carico an email stating that he needed to take medical leave under federal medical leave laws "in order to get better" so as to minimize Plaintiff's need for medical care during normal business hours.

4

17. Plaintiff verbally objected to the email and insinuations that Plaintiff was unable to perform his duties with UPS with the reasonable accommodations that had been granted to him, and stated that he considered Mr. Campbell's actions to be discrimination on the basis of disability and furthermore that he would take the matter up with UPS Human Resources Department.

18. In May 2018, Plaintiff complained to his Human Resources office, Ms. Gina Curzi, about Mr. Campbell's taunting behavior and constant questioning of his need for a reasonable accommodation to have medical visits to the VA, and that Mr. Campbell's behavior was exacerbating his condition.

19. Plaintiff specifically stated that he felt that Mr. Campbell created a hostile work environment and asked if they would engage Mr. Campbell to respect his medication conditions and reasonable accommodation.

20. At some point in May 2018, Mr. Campbell was counseled by Human Resources officials at UPS who later told Plaintiff that Mr. Campbell had been told to "back off."

21. After this complaint, Mr. Campbell's harassment worsened, but took different turns.

22. Mr. Campbell attempts to gain personal standing and build rapport with Plaintiff by seemingly innocuous inquiries into personal weapons systems that could defeat body armor systems. These discussions were both via telephone

5

and text, during business hours, and using UPS corporate communication systems.

23. Mr. Campbell divulged to Plaintiff that he personally sought a more powerful weapon to compliment his concealed carry weapon and began to pepper Plaintiff with questions about firearms whereas before he had never asked Plaintiff such questions.

24. Such bizarre unsolicited questioning continued throughout the rest of Plaintiff's employment.

25. Plaintiff felt that the questioning was bizarre and as if Mr. Campbell was trying to set him up to say something inappropriate.

26. Mr. Campbell also started to make unannounced surprise visits to Plaintiff's facility, whereas before they were always coordinated in advance.

27. Mr. Campbell would refuse to reply to Plaintiff's emails regarding work matters. Further if communications were made, they were done at odd hours, often outside the scope of general business hours.

28. Mr. Campbell would also refuse to return Plaintiff's phone calls.

29. Mr. Campbell also continued questioning others about Plaintiff's medical issues.

30. At some point during the Spring of 2018, UPS received a complaint about Plaintiff allegedly carrying a firearm on UPS property.

31. The complaint was false. Plaintiff did not and has never carried a firearm on UPS property.

32. This complaint came from a former UPS employee (a sales representative working out of the Montgomery Terminal) who had been terminated due to theft of company time and conflicting outside business obligations.

33. UPS conducted an investigation into the firearms matter and determined that it was unfounded and Plaintiff was cleared of any wrongdoing.

34. However, Plaintiff did use a novelty item that outwardly resembled a firearm, but was in fact a cigar lighter which he used to light cigars after work or on break with his employees as a morale boosting event.

35. UPS managers, Don Culmer and Chad Carico were aware of the cigar lighter and said nothing about it being prohibited on UPS property.

36. Throughout his employment, Mr. Carico never carried a firearm on UPS property.

37. In November 2018, the Teamsters Union, the bargaining unit for UPS drivers, threatened the company with a strike.

38. Managers, including Mr. Carico, were ordered by UPS CEO, Mr. Tod Webster, to gain intelligence on the upcoming union vote. Further it was directed by senior executive management to unduly influence and or affect undecided votes by his teamster employees with implied threats, such as saying, "it sure would

nice this Christmas if you had work with us in order to pay for your family's Christmas." Continued harassment tactics were discussed and directed during a bevy of daily conference calls at approximately lunchtime for approximately the first two weeks of December 2018.

39. This action led to some tensions in the work place between terminal managers and drivers, including Plaintiff and some of the drivers under his supervision. Plaintiff declined to engage in illegal activities against the Teamsters Union.

40. As a result of this conflict, on or about December 10, 2018, an anonymous employee filed another complaint about Plaintiff carrying a firearm on UPS property.

41. Plaintiff was only carrying the aforementioned cigar lighter on his person, and this was common knowledge amongst employees at Plaintiff's facility and amongst managers.

42. On December 13, 2018, Plaintiff arrived at work to find Montgomery Alabama County Deputy Sheriffs, with weapons at the ready.

43. Mr. Campbell was also at the facility, and stated to Plaintiff, "I got you now."

44. The Deputy Sheriffs conducted a search of Plaintiff's office and no weapon was found either in the office or on Plaintiff's person.

45. The cigar lighter was later found to be a lighter and not a firearm as was determined by the Alabama Department of Labor's unemployment compensation investigation.

46. Mr. Campbell though terminated Plaintiff regardless for allegedly carrying a firearm on UPS property in violation of UPS internal work rules.

47. Plaintiff objected to the termination and indicated that at no time had he carried a firearm on UPS property, and that at no time had there been any investigation to determine the nature of the object in question.

48. As Mr. Carico had accrued leave, his actual date of termination was some time after January 1, 2019.

49. UPS awards managers bonuses to managers who complete a full year of duty and are still employed by January 1st of the new year.

50. UPS denied Plaintiff his bonus due to him for his performance in 2018 even though he was employed through the beginning of 2019.

## CAUSES OF ACTION

### Count I.  Race Discrimination, 42 U.S.C. §2000e-2.

51. Plaintiff hereby incorporates by reference each and every preceding paragraph as if fully set out herein.

52. At all times relevant to this matter, Title VII, 42 U.S.C. §2000e-2 was in full force and effect and binding on the Defendant. Title VII, 42 U.S.C §2000e-2(a)

reads, "It shall be an unlawful employment practice for an employer to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

53. Defendant's discrimination was made manifest through pervasive disparate treatment including but not limited to verbal and psychological abuse, and ultimately Plaintiff's termination.

54. The statements and conduct on the part of Defendant complained herein represents a violation of Title VII, 42 U.S.C. §2000e-2.

55. As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed, suffering severe emotional and mental distress, embarrassment in front of his her peers, a loss of professional standing in the workplace, lost position, lost pay and benefits, lost bonuses for which he is entitled to relief in an amount to be proven at trial. As it has exacerbated his PTSD and Anxiety Disorders.

**Count II. Disability Discrimination, 42 U.S.C. §12101, et seq.**

56. Plaintiff hereby incorporates by reference each and every preceding paragraph as if fully set out herein.

57.  At all times relevant to this matter, the standards established by the Americans with Disabilities Act, 42 U.S.C. §12101, et seq., were in full force and effect and binding on the Defendant.

58.  Plaintiff is a qualified individual with a disability as that term is defined under 42 U.S.C. §12111(8).

59.  The Defendant discriminated against Plaintiff as alleged herein on the basis of his disability in violation of 42 U.S.C. §12112(a).

60.  Defendant's discrimination, harassment and hostile environment was made manifest through pervasive disparate treatment including but not limited to criticizing his use of leave which had been granted as a reasonable accommodation, otherwise interfering with Plaintiff's use of the reasonable accommodation granted to him, questioning of Plaintiff's mental health status to himself and others, and ultimately terminating Plaintiff for his disability.

61.  As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed, suffering severe emotional and mental distress, embarrassment in front of his peers, a loss of professional standing in the workplace, lost position, lost pay and benefits, lost bonuses for which he is entitled to relief in an amount to be proven at trial.

## Count III.  Retaliation under the ADA, 12 U.S.C. §12203

62.  Plaintiff hereby incorporates by reference each and every preceding paragraph as if fully set out herein.

63.  At all times relevant to this matter, 42 U.S.C. §12203 was in full force and effect and binding on the Defendant.  42 U.S.C §12203(a) reads:

(a) Retaliation.  No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

64.  Plaintiff had provided notice to Defendant of practices illegal under 42 U.S.C. 12101 et seq., such as the interference in the Plaintiff's exercise of his reasonable accommodation and disability and Defendant was aware of Plaintiff's prior protected activities. Accordingly, Defendant's termination of Plaintiff is a violation of 42 U.S.C. §12203.

65.  Plaintiff was discriminated against in reprisal for having engaged in protected EEO Activity, i.e. filing of an informal EEO complaint by having his her evaluations lowered from a previous evaluation, and by his supervisor's email

soliciting his colleagues and co-workers for negative information to support a lowered evaluation.

66. As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed, suffering severe emotional and mental distress, embarrassment in front of his peers, a loss of professional standing in the workplace, lost position, lost pay and benefits, lost bonuses for which he is entitled to relief in an amount to be proven at trial.

### Count IV.  USERRA Violations, 38 U.S.C. §4311.

67. Plaintiff hereby incorporates by reference each and every preceding paragraph as if fully set out herein.

68. At all times relevant to this matter, 38 U.S.C. §4311 was in full force and effect and binding on the Defendant.  42 U.S.C §4311(a) reads: "A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation."

69. Plaintiff was an employee of the Defendant as that term is defined under 38 U.S.C. §4303(3).

70. Defendant was an employer of Plaintiff as that term is defined under 38 U.S.C. §4303(4).

71. Defendant violated 38 U.S.C. §4311 by terminating the Plaintiff's employment with the Defendant.

72. As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed, suffering severe emotional and mental distress, embarrassment in front of her peers, a loss of professional standing in the workplace, lost position, lost pay and benefits, lost bonuses for which he is entitled to relief in an amount to be proven at trial.

### Count V.  Pendent State Law Claims

### Breach of Contract

73. Plaintiff hereby incorporates by reference each and every preceding paragraph as if fully set out herein.

74. Plaintiff and Defendant entered into a contract whereby Plaintiff would be awarded a monetary bonus for his performance for work during the 2018 Calendar year.

75. Plaintiff remained on the Defendant's employ through at least January 1, 2019 due to accrued leave and/or other reasons, even though he was informed of his termination on December 13, 2018.

14

76. Plaintiff was eligible for the monetary bonus for his performance during 2018, but the Defendant has refused to pay him for such bonus.

77. Plaintiff has suffered substantial harm and damages as a result of this contractual breach in the form of lost contractual monetary benefits in an amount to be determined.

## Intentional infliction of Emotional Distress

78. This is a claim against Defendant arising under the laws of the State of Alabama prohibiting the intentional infliction of emotional distress.

79. The conduct of the defendant's employee, Danny Campbell, as described above, was extreme, outrageous and beyond the boundaries of decency.

80. Such conduct created a hostile work environment that was unwelcomed by the Plaintiff, altered the Plaintiff's working conditions and should not go unpunished.

81. The intentional acts of harassment and intentional conspiracy toward Plaintiff by the Defendants' employee, Mr. Danny Campbell, and the subsequent ratification by the Defendants, altered the Plaintiffs' work environment.

82. Defendants' failure to implement its policy on discrimination in the work place and managers'/supervisors' conduct and standards proximately caused Plaintiff to suffer severe emotional distress, mental anguish, lost position, lost pay, embarrassment, humiliation and trauma for which he claims damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant and any other

DEFDENDANTS who may be later added to this action as follows:

1.    For compensatory damages and equitable relief, including but not limited to

lost wages and benefits, reinstatement, back pay, interest so as to make Plaintiff

whole in remedying the discrimination and retaliation to which he was subjected

without financial or other penalty;

2.    For non-pecuniary damages for emotional distress and mental anguish;

3.    Punitive damages;

4.    Liquidated damages in an amount equal to Plaintiff's lost wages and benefits

(including any bonuses);

5.    An amount equal to Plaintiff's bonus due him for his work in 2018;

6.    For any legal and attorney's fees and costs (including expert witnesses)

pursuant to all applicable statutes or legal principles;

7.    For costs of suit incurred;

8.    For pre- and post-judgment interest;

9.    Such other and further relief as the Court deems necessary and appropriate

under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for this matter.

October 4, 2018,                    Respectfully submitted,


Sterling L. DeRamus, Esq.
Attorney at Law
300 Vestavia Parkway, Suite 2300
Birmingham, Alabama 35216
TEL: (205) 504-0189
FAX: (205) 449-7392
sderamus@deramuslaw.com
BAR ID: ASB-6781-R60S

Attorney for Plaintiff


**PLEASE HOLD SERVICE – PLAINTIFF WILL REQUEST ADDED DEFENDANT WAIVE SERVICE OF PROCESS PURSUANT TO F.R.C.P. 4(d)**

**Defendant's Address:**
**United Parcel Service, Inc.**
**55 Glenlake Parkway NE**
**Atlanta, GA 30328**